IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

ROBIN G. STACY,                          :
                                         :
           Plaintiff,                    :
                                         :
VS.                                      :        1: 14-CV-103 (LJA)
                                         :
CAROLYN W. COLVIN,                       :
Commissioner of Social Security,         :
                                         :
           Defendant.                    :
_____:

## RECOMMENDATION

Plaintiff filed this Social Security appeal on June 23, 2014, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARD

In reviewing the final decision of the Commissioner, this Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a mere scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not

reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid . . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At Step One, the Commissioner determines whether the claimant is working. At Step Two, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity ("RFC") will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed his application for disability insurance benefits on July 9, 2010. (Tr. 20, 45). The Social Security Administration denied his claims initially and upon reconsideration. (Tr. 20, 84-85, 87, 95-96). An Administrative Law Judge ("ALJ") held a hearing in Thomasville, Georgia, on May 14, 2012. (Tr. 20, 44-75). Thereafter, in a hearing decision dated February 15, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 17-36). The Appeals Council

subsequently denied review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

***Statement of Facts and Evidence***

Plaintiff was fifty-six (56) years old at the time of the hearing before the ALJ, and he alleged disability since March 26, 2005, due to a heart condition, a stroke, and depression. (Tr. 20, 34, 45, 50-52). Plaintiff has a Bachelor of Arts degree from the University of West Georgia, and previously worked various editorial jobs at the Macon Telegraph. (Tr. 53-54, 55).

The ALJ determined that through the date last insured, claimant had the following severe combination of impairments:

> history of coronary artery disease status post-coronary artery by-pass graft; history of myocardial infarction (January 2003); mitral valve endocarditis status post-mitral valve replacement; congestive heart failure; history of stroke; history of retroperitoneal hematoma; low vision with history of homonymous hemianopsia; and diabetes mellitus (20 CFR 404.1520(c)).

(Tr. 23). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 23). According to the ALJ, Plaintiff had the RFC to perform light work with the following limitations:

> ability to lift and carry 20 pounds occasionally, and 10 pounds frequently; no climbing of ropes, ladders, or scaffolds; ability to climb stairs and ramps; ability to frequently balance, stoop, kneel, crouch, and crawl; ability to tolerate occasional exposure to unprotected heights, moving machinery, and related hazards (limited by vision deficits); and should not drive due to limited visual acuity and decreased field of vision in right eye.

(Tr. 24).

The ALJ determined that Plaintiff was capable of performing past relevant work as an assistant newspaper editor, as the work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 33). In the alternative, the ALJ considered Plaintiff's age,

education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines to determine that Plaintiff was also capable of performing jobs existing in significant numbers in the national economy, and thus was not disabled. (Tr. 35).

## DISCUSSION

Plaintiff asserts that (1) the ALJ failed to provide an adequate RFC assessment; (2) the ALJ erred in evaluating the evidence and assigning weight to the evidence; (3) the ALJ erroneously "emphasized" that Plaintiff has a history of alcohol abuse; and (4) the Commissioner did not carry her burden at Step Five of the evaluation process.

### (1) RFC Determination

Plaintiff alleges that the ALJ "failed in multiple ways to provide an adequate RFC assessment, including by not fully accounting for [Plaintiff's] vision loss, failing to properly assess his mental impairments." (Doc. 11, p. 6). A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The determination of the RFC is an assessment, based on all the evidence, of how a plaintiff's impairments and related symptoms affect his or her ability to perform work-related activities. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The regulations place the final responsibility for assessing a claimant's RFC with the ALJ. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. § 404.1545(a)(3). Medical evidence as to what a plaintiff can still do should describe the medical source's opinion as to a plaintiff's ability to do work-related activities, to understand, carry out, and remember instructions, and to respond appropriately to supervision, coworkers,

4

and workplace stress. § 404.1513(c).

Despite finding that Plaintiff suffers from severe impairments, the ALJ determined that Plaintiff possesses the RFC to perform light work with the following limitations:

> ability to lift and carry 20 pounds occasionally, and 10 pounds frequently; no climbing of ropes, ladders, or scaffolds; ability to climb stairs and ramps; ability to frequently balance, stoop, kneel, crouch, and crawl; ability to tolerate occasional exposure to unprotected heights, moving machinery, and related hazards (limited by vision deficits); and should not drive due to limited visual acuity and decreased field of vision in right eye.

(Tr. 24).

*a. Vision Loss*

Plaintiff argues that the ALJ erroneously determined that Plaintiff is limited to occasional exposure to unprotected heights, moving machinery, and related hazards due to vision deficits, and that Plaintiff should not drive due to "limited visual acuity and decreased field of vision in right eye." (Doc. 11, p. 6).

To support his argument, Plaintiff directs the Court's attention to two physician opinions. First, Plaintiff refers to Dr. Flowers's opinion that Plaintiff elicited "significant peripheral vision loss in the right half of the vision in each eye." (Tr. 759). Plaintiff points out that that Dr. Flowers opined that "the right eye indicates three quarters of his vision is affected and the left eye indicates half his vision is affected . . . visual efficiency is calculated at 14% in the right eye [ ] and 46% in the left eye[.]" (Tr. 759). Dr. Flowers also opined that Plaintiff "will certainly have difficulty in managing many daily activities due to his vision loss." (Tr. 760). Next, Plaintiff discusses Dr. Ponterio's assessment that Plaintiff experienced visual limitations in his near acuity, far acuity, depth perception, and field of vision, but that Plaintiff was unlimited in his color vision and accommodation. (Tr. 672).

In his RFC assessment, the ALJ discussed all of the evidence as to Plaintiff's vision

impairments. The ALJ considered Plaintiff's testimony and the written record, including the following: "visual impairment from stroke," "he had worn prescription eyeglasses for several years," and that "he had experienced poor eyesight and inability to read due to mental confusion[.]" (Tr. 24-25, 56, 61, 68). The ALJ also considered Marion Young's testimony that Plaintiff "had no peripheral vision," and that Plaintiff "has worn eyeglasses most of the time since 2007, but does not use any other assistive devices[.]" (Tr. 25, 191). The ALJ further considered Bainbridge Ophthalmology records from 2007, which reflect that Plaintiff complained of seeing spots and flashing lights but no loss of vision, and was diagnosed with "right homonymous hemianopsia; hypertension; and left eye posterior vitreous detachment." (Tr. 28-29, 558-560). The ALJ also noted that Bainbridge Ophthalmology referred him to the ER for evaluation and treatment of a possible stroke. (Tr. 29, 560). The ALJ noted that in Dr. Flowers' May 2012 exam, Plaintiff

> presented with complaints of blurry vision and difficulty with reading. Dr. Flowers reported that the claimant's uncorrected visual acuity was 20/20–right and 20/30 left (correctable to 20/20); that there was no evidence of diabetic retinopathy; 5 of 8 quadrants of vision involved scotoma (areas of non-seeing next to areas of seeing; and the claimant had significant peripheral vision loss in the right half of the vision in each eye. The claimant was encouraged to maintain improved blood sugar control[.]

(Tr. 29-30, 759). The ALJ discussed Dr. Flowers' findings after determining that "Counsel's argument (Exhibit 8D) that vision defects (including visual field constriction) precluded the claimant from performing his past relevant work as an assistant editor is not supported by the overall evidence of record." (Tr. 34).

> While noting in May 2012 that 5 of 8 quadrants of the claimant's vision involved scotoma (areas of non-seeing next to areas of seeing) and that the claimant had significant peripheral vision loss in the right half of the vision in each eye, Dr. Frank Flowers, O.D. nevertheless reported that the claimant's uncorrected visual acuity

was 20/20 right eye and 20/30 left eye (correctable to 20/20) and that there was no evidence of diabetic retinopathy. Dr. Flowers encouraged the claimant to maintain blood sugar control, but no visual restrictions were specified.

(Tr. 34).

The ALJ also noted that a state agency medical consultant, Dr. Ponterio, opined that Plaintiff was subject to visual accommodation and color vision limitations due to homonymous hemianopsia, and must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights due to visual field constriction. (Tr. 30, 672-73).  The ALJ gave significant weight to Dr. Ponterio's overall assessment. (Tr. 30). However, in his RFC assessment, the ALJ incorrectly stated that Dr. Ponterio found that Plaintiff had limitations in visual accommodation and color vision, the two categories for which Dr. Ponterio actually found no limitations. (Tr. 30, 672). The ALJ considered Dr. Ponterio's assessment that Plaintiff could not climb ladders, ropes, or scaffolds, and that he must avoid concentrated exposure to dangerous moving machinery and unprotected heights due to visual field constriction. (Tr. 30, 671, 673).

The ALJ then discussed Plaintiff's activities of daily living. (Tr. 31). The ALJ concluded that

[t]he record clearly indicates that the claimant's vision was thereafter sufficient to enable the claimant to perform vision-intensive activities that included driving an automobile; using a computer for Internet access, etc.; and watching television programs.

(Tr. 34).

While Plaintiff correctly points out that the ALJ included only limitations in Plaintiff's right eye in the RFC statement, and that the ALJ misstated Dr. Ponterio's findings, the RFC assessment accounted for the entirety of Plaintiff's visual problems. "In a Social Security case, erroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard." *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010);

*see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *see also Giron v. Colvin*, 2015 WL 3536523, at *3 (S.D. Ga. June 3, 2015) (adopting the magistrate judge's recommendation that "[w]hile it is clear the ALJ incorrectly stated Plaintiff had Type II diabetes . . . the ALJ accurately addressed Plaintiff's resultant complications, and Plaintiff has identified no record evidence to the contrary. The incorrect reference to Type II diabetes is a harmless typographical error that does not form a basis for remand."); *Harris v. Astrue*, 2008 WL 4725194, at *7 (S.D. Fla. Oct. 24, 2008) ("Although the language used by the ALJ in writing the opinion may have included several misstatements of the record, further review of the record in its entirety would indicate the ALJ's [ ] analysis was in fact supported by substantial evidence.").

As explained above, the ALJ thoroughly discussed all of the evidence, including Dr. Flowers' opinion, in formulating the RFC assessment. The ALJ explained that Dr. Flowers opined that Plaintiff's visual acuity was 20/20 in the right eye and correctable to 20/20 in the left eye. The ALJ also applied the correct legal standard to Dr. Ponterio's assessment and accounted for Dr. Ponterio's opinions as to Plaintiff's exposure to workplace hazards, despite misstating the record. The ALJ limited Plaintiff to no driving due to vision deficits and to occasional exposure to unprotected heights, moving machinery, and related hazards. (Tr. 24). Thus, Plaintiff has failed to establish that the ALJ's RFC assessment did not account for Plaintiff's visual impairments and was not supported by substantial evidence.[1] The ALJ's misstatements of the record are harmless errors.

*b. Depression*

Plaintiff argues that the ALJ erred by finding that Plaintiff's depression was a non-severe

---

[1] Plaintiff argues that the Social Security Rulings provide that, "[w]here a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others--usually a constriction of visual fields rather than a loss of acuity--the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well)." SSR 83-14 (S.S.A. 1983), 1983 WL 31254, at *5 (Jan. 1, 1983). Here, the ALJ considered the entire record and determined that Plaintiff had the ability to perform light work with significant limitations.

impairment, and that the ALJ improperly failed to assess mental limitations in his RFC finding. (Doc. 11, pp. 9-13). The ALJ determined that Plaintiff's depression was a non-severe impairment "because, even when considered in combination with other medically determinable impairments discussed in this decision, it has had minimal (if any) limiting effects on the claimant's ability to perform work activities . . . ." (Tr. 23). Substantial evidence must support the ALJ's finding that Plaintiff's alleged depression did not constitute a severe impairment. *Larry v. Comm'r Soc. Sec.*, 506 F. App'x 967, 970 (11th Cir. 2013).

> [A]n impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities, which are defined as 'the abilities and aptitudes necessary to do most jobs.' 20 C.F.R. § 404.1521(b). Examples of basic work activities include physical activities like walking, standing, and carrying, and 'seeing, hearing, and speaking,' as well as understanding, following, and remembering simple instructions, using judgment, '[r]esponding appropriately to supervision, co-workers[,] and usual work situations' and 'dealing with changes in a routine work setting.'

*Smith v. Comm'r Soc. Sec.*, 535 F. App'x 894, 896 (11th Cir. 2013). To determine whether a plaintiff's impairment is severe, the ALJ must consider the following four areas of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). If the ALJ rates the claimant's degree of limitation in the first three functional areas as "none" or as "mild," and rates the degree of limitation in the fourth area as "none," then the ALJ will conclude that the claimant's impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation on the ability to do work. § 416.920a(c)(4) – (d)(1).

In the instant action, the ALJ determined that Plaintiff's mental impairments were non-severe, as he found that Plaintiff's medically determinable impairments did not cause more than mild limitation in the first three functional areas, and found no episodes of decompensation. (Tr.

32). The Court will now consider whether said findings are supported by substantial evidence.

First, the ALJ considered Plaintiff's activities of daily living. He determined that Plaintiff had only mild limitation, as

> [a]lthough the record shows that the claimant was not a good housecleaner and had poor personal hygiene habits, he nevertheless performed a relatively broad range of activities that included driving; shopping (in stores and on-line); occasional meal preparation; pet care; and occasional lawn mowing.

(Tr. 32).

These findings are supported by substantial evidence. Mrs. Young reported that Plaintiff's daily activities involve the following: "wakes, prepares coffee, watches TV, checks e-mails, feeds dog, gets supper at drive through places, more TV and computer[.]" (Tr. 185). Mrs. Young also reported that Plaintiff can mow his yard on a riding mower twice per year. (Tr. 187). Plaintiff self-reported that his daily activities include the following: "I get up around 10 AM. I watch T.V. and feed the dogs, eat, take medicine." (Tr. 212). Plaintiff reported that he can prepare sandwiches, but mostly eats take out. (Tr. 213). Plaintiff reported that he shops for dog food in stores, and shops on the computer. (Tr. 214).

Next, the ALJ found only mild limitations in Plaintiff's social functioning. The ALJ determined that

> [a]s noted above, the claimant self-reported that he fears being around crowds or people, and described himself as antisocial and reclusive. Nevertheless, the record reflects that the claimant enjoyed mutually supportive relationships with Dr. and Mrs. Young; and Mrs. Young endorsed the claimant's ability to get along with authority figures. Moreover, the claimant's medical records indicated that the claimant was a cooperative patient, with no significant social functioning deficits noted.

(Tr. 32). These findings are also supported by substantial evidence. Plaintiff's friend, Mrs. Young, reported that Plaintiff spends time with only Dr. and Mrs. Young, and visits with them

once per week. (Tr. 189). She reported that Plaintiff goes to doctors and to the store. (Tr. 189).

Mrs. Young also reported that Plaintiff would do fine getting along with authority figures. (Tr.

191).[2] In November 2008 and in May 2009, a doctor noted that Plaintiff "states he has been

doing very well." (Tr. 569-70).

The ALJ then found that Plaintiff had only mild limitation in concentration, persistence or

pace. The ALJ determined that while Plaintiff

> self-reported that he had experienced difficulties with task
> completion, maintaining concentration, handling stress and
> changes in routine, and memory deficits, the overall record shows
> that the claimant could sustain concentration and attention
> sufficient to capably pay bills, manage bank accounts, follow
> television programs, regularly drive an automobile, and use the
> Internet.

(Tr. 32).  Plaintiff self-reported that he watches television, drives, can pay bills, count change,

handle a savings account, and use a checkbook. (Tr. 212, 214).  Finally, the ALJ found that

Plaintiff did not experience any extended episodes of decompensation. (Tr. 32).

The ALJ's finding that Plaintiff suffered from mild limitations in the first three functional

areas and no episodes of decompensation is supported by substantial evidence. *See Stone v.*

*Comm'r of Soc. Sec.*, 586 F. App'x 505, 512 (11th Cir. 2014) (holding that the ALJ's finding that

plaintiff did not suffer a severe impairment was supported by doctor's reports of plaintiff's

exaggeration of his daily activities, testimony of plaintiff's daily activities, and the ALJ's finding

that the plaintiff's statements concerning the intensity, pace, and limiting effects were not

credible). Furthermore, while Plaintiff was diagnosed with depression by Dr. Miller, a diagnosis

itself is not evidence of the severity of the disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th

Cir. 1987) ("These opinions omit any discussion of why the disability makes it impossible for the

---

[2] Plaintiff argues that the ALJ improperly relied on the lay evidence from Dr. and Mrs. Young. (Doc. 11, p. 11).
However, as explained in Part 2, *infra*, the opinions of friends are not entitled to deference.

claimant to be gainfully employed, or the nature of the permanence of the disability."); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) ("A diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Thus, the ALJ did not err in determining that Plaintiff's depression was a non-severe impairment at Step Two.

However, even if the ALJ erred by finding Plaintiff's impairment non-severe, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead . . . the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). The ALJ's RFC determination accounted for Plaintiff's mental limitations. (Tr. 24-33). *See Perry v. Astrue*, 280 F. App'x 887, 894 (11th Cir. 2008) (holding that the ALJ did not err when he did not identify which impairments he considered severe at step two, when he "explicitly stated, when determining Perry's RFC in step four, that he was considering 'all symptoms, including pain' and that Perry alleged 'an enlarged heart, high blood pressure, chest pain, and degenerative disc disease.' The ALJ also stated that he considered these conditions singly and in combination."); *see also Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 859 (11th Cir. 2013) ("[E]ven if the ALJ erred by failing to identify [the condition] as a severe limitation at step two, the ALJ properly considered the symptoms and limitations that would result from [the condition] at the latter stages of the five-step disability evaluation.").

The ALJ cited to medical records and to Plaintiff's testimony, including the following: Plaintiff claimed to suffer from worsening depression and that he could not work due to

depression; Marion Young's reports that Plaintiff's good qualities were being overshadowed by his emotional and mental problems; James Young's report that Plaintiff's severe depression and inactivity resulted in an isolated and dysfunctional lifestyle;  Dr. Cormier's assessment that she had insufficient evidence that the claimant had a medically-determinable mental impairment; Dr. Ames-Denard's assessment that there was insufficient evidence that Plaintiff had a medically-determinable mental impairment; Plaintiff's testimony that he does a "half-way job" of cleaning his house due to depression; and that Plaintiff's treating physician diagnosed him with depression, and conservatively treated him with conventional psychotropic drug therapy. (Tr. 24-26, 31, 145, 185-192, 651, 667, 570). Thus, the ALJ properly considered, at Step Four, Plaintiff's symptoms and limitations resulting from his alleged depression.

Plaintiff also argues that the ALJ mischaracterized the state agency psychological consultant assessments. (Doc. 11, p. 11). Plaintiff points out that the ALJ gave "some weight" to the assessments, but that if he had properly characterized them, he would have "been sure to obtain a consultative examination – as he represented he would do at the hearing." (Doc. 11, p. 11). However, an opinion from a non-examining source is considered to be "opinion evidence." 20 C.F.R. § 404.1527. The ALJ is "not bound by any findings made by State agency medical or psychological consultants." *Id.* Plaintiff's argument that the ALJ should have given significant weight to the agency consultant opinions is thus without merit.

Finally, Plaintiff alleges that the ALJ violated SSR 96-7p, by failing to consider potential causes of Plaintiff's noncompliance with his treatment. (Doc. 11, pp. 12-13). According to SSR 96-7p,

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information

13

in the case record, that may explain infrequent or irregular medical
visits or failure to seek medical treatment.

1996 WL 374186, at *7 (July 2, 1996). While the ALJ noted Plaintiff's noncompliance with

treatment (Tr. 28), nothing in the record suggests that the ALJ drew any inference as to

Plaintiff's failure to seek medical treatment. The ALJ did not mention Plaintiff's failure to

comply with any prescribed treatment as a reason for finding that Plaintiff's depression was not a

severe impairment.

*c. Credibility*

     Plaintiff alleges that the ALJ erred when he assessed Plaintiff's credibility. (Doc. 11, p. 13).

When reaching a conclusion as to disability, the ALJ must consider Plaintiff's "statements about

the intensity, persistence, and limiting effects of [his or her] symptoms, and [] evaluate

[Plaintiff's] statements in relation to the objective medical evidence and other evidence . . . ." 20

C.F.R. § 404.1529(c)(4). The ALJ must consider the record as a whole, including objective

medical evidence, the individual's own statements about the symptoms, statements and other

information provided by treating or examining physicians, psychologists, or other individuals, and

any other relevant information. SSR 96-7p, 1996 WL 374186, at *2.

     The ALJ determined that:

> [Plaintiff's] statements concerning his impairments and their impact
> on his ability to do work during the period March 26, 2005 through
> June 30, 2009, are only partially credible: (a) The claimant's
> documented activities of daily living, despite his impairments, are
> substantially more consistent with an individual able to sustain
> competitive work activity than they are of an incapacitated person. (b)
> No treating physician has opined that the claimant was disabled
> during the period March 26, 2005 through June 30, 2009, or even
> stated that he had greater ongoing restrictions than the functional
> limitations included in the undersigned's above-stated residual
> functional capacity. (c) The objective medical evidence of record in
> this case is consistent with an ability to perform sustained light work,
> subject to the limitations and restrictions specified in the above-stated

residual functional . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above-stated residual functional capacity.

(Tr. 33).

Plaintiff argues that the ALJ did not provide the necessary specificity to permit meaningful review, as he did not explain which activities indicate an ability to sustain work. (Doc. 11, p. 14). Participation in everyday activities, including housework and fishing, do not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F. 3d 1436, 1441 (11th Cir. 1997). However, here "the ALJ did not rely solely on claimant's daily activities to determine her disability status. Instead, he properly evaluated those activities in evaluating claimant's credibility." *Jones v. Astrue*, 2013 WL 360313, at *4 (N.D. Ala. Jan. 28 2013) (citing *Hennes v. Comm'r Soc. Sec. Admin*., 130 F. App'x 343, 348-49 (11th Cir. 2005) (holding that the degree of the plaintiff's complaints were belied by her testimony that she could shop for groceries and cook meals, put clothes in the washing machine, fold, and hang clothing, and crochet)). The ALJ thoroughly discussed Plaintiff's activities of daily living in the RFC determination. (Tr. 31, 32).

Plaintiff also argues that the ALJ erred when he stated that no treating physician determined that Plaintiff was disabled. (Doc. 11, p. 15). As Plaintiff points out, the Eleventh Circuit has reasoned that when a physician did not opine as to a plaintiff's ability to perform light work, "[s]uch silence is equally susceptible to either inference, therefore, no inference should be taken." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "When a doctor's silence about a claimant's ability to work is subject to competing inferences, we have stated that no inference should be drawn from that silence. Contrary to [the plaintiff's] contentions, however, the ALJ did not base his [RFC] determination merely on Dr. Torres' silence with respect to [the plaintiff's] functional limitations." *Clyburn v. Comm'r Soc. Sec.*, 555 F. App'x 892, 894 (11th Cir. 2014)

15

(holding that the ALJ's RFC determination was supported by substantial evidence when the ALJ considered the doctor's observations and plaintiff's admission that she could engage in certain activities of daily living). In formulating Plaintiff's RFC, the ALJ relied upon Plaintiff's activities of daily living and upon the medical evidence of record, not solely upon the silence of the doctor to reach his credibility determination.

Finally, Plaintiff asserts that the ALJ erred when he stated that the objective medical evidence was consistent with the ability to perform light work. (Doc. 11, p. 15). "[T]he ALJ's citation or summary of the physician's notes, standing alone, cannot substitute for analysis of the meaning of the notes." *Torres v. Comm'r Soc. Sec.*, 2013 WL 4734820, at *8(M.D. Fla. Sept. 3, 2013). However, the ALJ thoroughly discussed the medical evidence of record in his RFC determination. (Tr. 23-33). The ALJ then, in his credibility determination, analyzed the evidence to determine that the objective evidence was consistent with the ability to do light work. (Tr. 33).

The ALJ applied the correct legal standard, as he relied on the record as a whole to determine that Plaintiff's testimony was not entirely credible. Substantial evidence supports the ALJ's credibility determination, and the ALJ did not commit reversible error. The ALJ adequately considered Plaintiff's subjective accounts of symptoms and limitations pursuant to the governing rulings and regulations. The ALJ relied upon medical evidence and Plaintiff's activities of daily living to provide adequate and specific reasons for discrediting Plaintiff's subjective accounts. *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) ("If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so.").

### (2) Weight Assigned to the Evidence

Plaintiff argues that the ALJ did not properly evaluate the lay evidence of Dr. and Mrs. Young. (Doc. 11, p. 16). Plaintiff argues that the ALJ improperly found only mild restriction in

16

social functioning when he considered the lay evidence, and that the ALJ did not meaningfully specify the weight given to the evidence. *Id.*

The ALJ specified that he gave "some weight" to Mrs. Young's assessment. (Tr. 26). The ALJ reasoned that he gave her assessment some weight because of her "status as a non-medical source; her status as the claimant's long-term friend; and the fact that her statement was made nearly 3 years following the expiration of the claimant's Title II insured status." (Tr. 26). The ALJ also specified that he gave "some weight" to Dr. Young's assessment because of his "status as a non-medical source; his status as the claimant's former college professor and long-term friend; the fact that his statement was made nearly 3 years following the expiration of the claimant's Title II insured status." (Tr. 26).

Friends are considered "other sources" under the regulations. 20 C.F.R. § 416.913(d)(1).

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). To determine the weight given to opinion evidence from other sources, the ALJ may consider: "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6.

"While the opinions of 'other sources' . . . are not entitled to deference, generally the ALJ 'should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." *Hollinger v. Colvin*, 2015 WL 1470697, at *6 (S.D. Ala. March 31, 2015)

(quoting *Butler v. Astrue*, 2012 WL 1094448, at *3 (S.D. Ala. March 30, 2012)). Here, the ALJ did not err by failing to afford the opinions of Plaintiff's friends, Dr. and Mrs. Young, controlling weight. The ALJ considered the extent of the relationship between Plaintiff and the Youngs, and that their statements were dated three years after Plaintiff's date last insured. The ALJ articulated the weight given to their opinions ("some weight"), and, as explained in the RFC assessment, found their opinions unpersuasive in light of the medical evidence and Plaintiff's daily activities.

### (3) *History of Alcohol Abuse*

Plaintiff alleges that the ALJ incorrectly interpreted the medical records as a whole to determine that Plaintiff has a history of alcohol abuse, and erred by concluding that Plaintiff appeared to meet listing 12.09 (history of alcohol abuse). (Doc. 11, p. 18). The ALJ noted that "claimant's past medical history included alcohol abuse and tobacco abuse, and that he had experienced delirium 3-4 days after admission –evaluated as suggestive of alcohol withdrawal." (Tr. 28). The ALJ also discussed Memorial Hospital records that Plaintiff told his treating physician that he used alcohol occasionally. *Id.* Plaintiff suggests that the Court should find the ALJ's findings as to Plaintiff's alcohol use to be harmful error in light of the ALJ's finding that Plaintiff was partially credible and that the ALJ referenced Plaintiff's alcohol use more than once.

The record supports the ALJ's finding that Plaintiff's past medical history includes alcohol abuse, and that hospital records included a final impression that Plaintiff suffered from "[d]elirium on admission suggested to be alcohol withdrawal." (Tr. 572, 583, 587). As Defendant points out, the ALJ determined that Plaintiff's "history of alcohol abuse (in reported remission)" was a non-severe impairment. (Tr. 23). The ALJ's credibility determination did not reference alcohol, and as explained above, the medical evidence of record supports the ALJ's comments as to Plaintiff's past alcohol use. Thus, Plaintiff's claim that the ALJ erred by referencing Plaintiff's

medical records containing references to alcohol use is without merit.

### *(4) Vocational Expert*

Plaintiff also asserts that the ALJ committed error by failing to include all of Plaintiff's limitations in the hypothetical posed to the Vocational Expert ("VE"). (Doc. 11, pp. 19-20).

> [A]lthough VE testimony is not required in determining whether a claimant can perform her past relevant work, the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.' *see* 20 C.F.R. § 404.1560(b)(2).

*Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2003) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990) (holding that "[t]o the extent the ALJ considered the VE's opinion that, based on [the plaintiff's] RFC, she could return to her past relevant work as a receptionist, the VE's testimony was based on hypothetical questions [comprising] all of Hennes's impairments. And the ALJ properly utilized this expert testimony, along with the other evidence in the record, in determining the relationship between Hennes's RFC and her past relevant work."). Here, the ALJ determined that Plaintiff could perform her past relevant work. (Tr. 33-34). Thus, the ALJ was not required to use a VE.

However, to the extent the ALJ relied upon the VE's opinion, the ALJ posed a hypothetical question to the VE that incorporated Plaintiff's limitations. (Tr. 272). The hypothetical question mirrored Plaintiff's RFC, and accounted for his vision limitations in that Plaintiff should not drive due to limited visual acuity and decreased field of vision in his right eye, or be exposed more than occasionally to unprotected heights, moving machinery, and related hazards due to vision deficits. (Tr. 24, 272). *See Kinnard v. Comm'r of Soc. Sec.*, 426 F. App'x 835, 837 (11th Cir. 2011) ("A 'hypothetical question adequately accounts for a claimant's limitations when the question

19

otherwise implicitly accounts for the limitations.' The administrative law judge instructed the [VE] that the hypothetical individual had 'no significant environmental limitations,' which accounted for the minimal environmental limitations that the administrative law judge included in [the plaintiff's] residual functional capacity assessment.").

"[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, (11th Cir. 2013) ("Because the ALJ correctly determined that this opinion was to be accorded less weight and was not supported by the medical evidence and [Plaintiff's] testimony regarding her daily activities, the ALJ was not required to include these limitations in the RFC and hypothetical."). Thus, the hypothetical question posed to the VE accounted for Plaintiff's impairments, and the ALJ did not err by failing to ask the VE about the mental limitations he did not find credible. *See Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 625 (11th Cir. 2012) (finding the ALJ's hypothetical question accounted for all the limitations stemming from the plaintiff's impairments, and therefore the VE's testimony constituted substantial evidence).

The ALJ found, in the alternative, that other jobs Plaintiff could perform existed in significant numbers in the national economy. (Tr. 35). The testimony of a VE may provide the basis for a finding by the ALJ that Plaintiff can still perform other jobs at Step Five. *Id.* "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011). As explained above, the ALJ did not err by failing to ask the VE about impairments the ALJ did not find credible.

## Conclusion

As the Commissioner's decision in this matter is supported by substantial evidence, the undersigned recommends that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the district judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 22nd day of June, 2015.

/s ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE